IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

        *Plaintiff,*

    v.

STEPHEN GEORGE,

        *Defendant.*

Criminal No. 2:22-cr-107 - 1

Hon. William S. Stickman IV

## **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

      The Constitution of the United States is the supreme law of the land. Under the rule of law embodied in and guaranteed by the Constitution, the actions of law enforcement are limited and, under the Fourth Amendment, evidence garnered in violation of the law must be suppressed—no matter how incriminating to a defendant. In this case, Defendant Stephen George ("George") filed a Motion to Suppress Evidence (ECF No. 40).[1] The Government filed a response arguing that George's motion should be denied. (ECF No. 45). After conducting an evidentiary hearing and carefully considering the record and the parties' arguments, the Court holds that the search and seizure of George's vehicle, which resulted in the gathering of incriminating evidence against him, fell below the standards mandated by the Fourth Amendment. As such, the Court is compelled to grant George's motion and suppress the evidence garnered in the illegal search and seizure.

---

[1] The Court has jurisdiction over the suppression motion under 18 U.S.C. § 3231.

## I.     STANDARD OF REVIEW

The Fourth Amendment safeguards the "right of the people to be secure . . . against unreasonable searches and seizures."  U.S. Const. amend. IV.  "Evidence obtained through unreasonable searches and seizures must be suppressed as 'fruit of the poisonous tree.'"  *United States v. Dowdell*, 70 F.4th 134, 139 (3d Cir. 2023) (citation omitted).  "On a motion to suppress, the government bears the burden of showing that each individual act constituting a search or seizure under the Fourth Amendment was reasonable."  *United States v. Ritter*, 416 F.3d 256, 261 (3d Cir. 2005) (citation omitted).

## II.     FACTUAL BACKGROUND

On July 11, 2021, Monroeville Police Department Lieutenant Jason Safar ("Lieutenant Safar") submitted an Application for Search Warrant and Authorization seeking to seize "any and all illegal narcotics, narcotics paraphernalia, narcotics packaging materials," from a "2002 red GMC Yukon SUV, bearing PA registration LLT-0838, VIN # 1GKEK13Z92J249219, currently being held at the Monroeville Police Station."  (ECF No. 40-1, p. 1).  The Affidavit of Probable Cause ("affidavit") stated as follows:

**Commonwealth of Pennsylvania**



**AFFIDAVIT OF PROBABLE CAUSE**

## COUNTY OF__Allegheny

Docket Number:

(Issuing Authority):

Police Incident
Number: #21-002157

Warrant Control
Number:

*PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:*
*Social security numbers and financial information (e.g. PINS) should not be listed. If the identity of an account number must be established, list only the last four digits. 204 Pa. Code §§ 213.1-213.7.*

Your Affiant, Lieutenant Jason Safar of the Monroeville Police Department is a law enforcement officer of the Commonwealth of Pennsylvania within the meaning of section 5702, Title 18 Pa. C.S.A, and as such, I am empowered to make arrests for the criminal offenses enumerated in Titles 18 and 35, PA C.S.A. I have been a Monroeville Police Officer since October of 2000 and a Patrol Shift Supervisor since March 2008.

Prior to being a Monroeville Police Officer I was a duly sworn full time officer in the Borough of Aspinwall. As a result of my training and experience, your Affiant is familiar with marijuana, heroin, crack cocaine, cocaine, synthetic marijuana and prescription pills; the manner in which they are packaged; and the methods of distribution to include the use of cell phones and vehicles to arrange and complete the transactions.

During my employment as a Police Officer, your Affiant has been involved with or assisted in hundreds of criminal investigations. Many of these investigations have resulted in the arrest and successful prosecution of individuals for violations of various criminal statutes.

On 11 July 2021 at your Affiant was running license plates at the various hotels/motels in Monroeville. At approximately 10:57 hrs I ran PA registration LKN-5416 on a blue Chevrolet, that was parked in the back parking lot of the Roadway Inn located at 2727 Mosside Blvd. The owner of the vehicle came back as wanted and the vehicle was occupied by a female matching the photo of the wanted person. At that time I pulled in behind the aforementioned vehicle and the driver stepped out. I asked her if her name was "Ebony" and she advised her that she was coming back as a wanted person and asked for ID so that information could be verified via Monroeville Dispatch. During this time "Ebony" was talking with a black male, who's vehicle was parked right next to hers. In the approximately ten minutes it took for Assisting Officer DeFelice to confirm the warrant was active out of Wilkins Township, we spoke with both Ebony and the male, who stated they were just leaving the Motel as we pulled up.

The male appeared very nervous speaking with officers and at least once or twice went into his vehicle before walking back over to where officers DeFelice and Savage were standing. There would have been no reason for his nervousness since we were only making small talk and hadn't even asked his name. I was between the two vehicles at this time and looked through the windows of each. Inside the male's vehicle I observed a purple Crown Royal bag sitting on the center console. The bag was standing on end and appeared to be filled with something, but not ridged as if a bottle was in it.

Once the warrant was confirmed on Ebony Massey we asked if the vehicle could be released to her male friend. When she said yes Officer Savage asked for his Driver's License so we could verify it was valid. He told us he didn't have it on him and he had to go back to his room to get it. Both Officer Savage and I found it strange that his ID would be in the room if they had already checked out. Within a moment or two he returned from the breezeway and presented me with his driver's license. I gave it to Officer DeFelice to run and Officer Savage went into the breezeway to see if the male, now identified as Stephen George, had discarded anything. Officer Savage didn't find anything, but Stephen George came back as a wanted person out of Wilkins Township. He was taken into custody without incident at that time.

I then walked over to his vehicle to make sure it was secured and noticed the Crown Royal bag was no longer on the center console. I asked where the bag was and what was inside. Because of my training and experience I know it's common for people to carry narcotics in that container specifically. He said just some stuff, "names and stuff". I even joked with Mr. George about the number of people I have dealt with who carry drugs in those bags. I asked for consent to search and he said "no". He and Ms. Massey were then transported to Wilkins Township PD by Officers DeFelice and Savage and I went into the motel to view security video with the manager.

I, Lt Jason Safar    ,THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

(SEAL)

| Affiant Signature | 7-11-21 Date | Issuing Authority Signature | Date |

Page 2 of 3

| **Commonwealth of Pennsylvania** |  | **AFFIDAVIT OF PROBABLE CAUSE** |
|---|---|---|

## COUNTY OF Allegheny

Docket Number:

(Issuing Authority):

Police Incident
Number: #21-002157

Warrant Control
Number:

*PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:*
*Social security numbers and financial information (e.g. PINS) should not be listed. If the identity of an account number must be established, list only the last four digits. 204 Pa. Code §§ 213.1-213.7.*

Stephen George can clearly be seen walking into the breezeway, entering the stairwell and then putting something down the back of his pant into the crack of his buttocks. I advised the transporting officers that he had concealed something and that area of his person needed to be checked more thoroughly. When they did Officer DeFelice recovered a small bag of Marijuana. I returned to the vehicle and requested a K-9 to do an air sniff. A Penn Hills K-9 responded to the scene, but did not alert on the vehicle, even though a "blunt" was in plain view between the two cup holders on the dashboard. Stephen George has been found guilty on five different occasions for possession of and/or manufacturing charges. Because Stephen George concealed the Crown Royal Bag after I commented on it, his being in possession of Marijuana, a Marijuana "blunt" in plain view and his long history of controlled substance related charges I am requesting a search warrant to recover additional contraband I believe is in the vehicle.

I, Lt Jason Safar ,THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

(SEAL)

| | | | |
|---|---|---|---|
| *Affiant Signature* | 7-11-21 *Date* | *Issuing Authority Signature* | *Date* |

AOPC 410B-10

The search warrant was granted that same day by a magisterial district judge sitting in Pittsburgh Municipal Court. (ECF No. 40-1).

The Court granted George's request for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). (ECF Nos. 41 and 43). The following evidence was adduced at an evidentiary hearing.[2]

On July 11, 2021, Monroeville Police Department Lieutenant Jason Safar[3] was patrolling parking lots running license plates to check for warrants, suspended vehicles, insurance cancellations, and/or expired license plates. (ECF No. 58, pp. 11, 29, 31). At approximately 10:57 a.m., Lieutenant Safar ran a plate (LKN-5416) on a vehicle parked at the Rodeway Inn. The plate was identified as belonging to Ebony Massey ("Massey"). Lieutenant Safar discovered that she had an active arrest warrant for resisting a police officer. A woman was sitting in the vehicle. Lieutenant Safar positioned his vehicle to block her vehicle, and got out of his vehicle to speak with the woman to ascertain her identity. She confirmed that her name was Massey, and she then complied with his directive to get out of the vehicle. (*Id.* at 13, 31–33, 35); (ECF No. 57-3). Two other officers arrived in their police vehicle. Another officer took Massey's license to run a background check. Massey's boyfriend, George, whose vehicle (a red 2002 GM Yukon

---

[2] This section encompasses the Court's findings of fact as well as its credibility determinations. When ruling on a suppression motion, the Court takes on the role of fact finder and thus "is responsible for assessing the credibility of the testifying witnesses, weighing the evidence, and reaching any 'inferences, deductions and conclusions to be drawn from the evidence.'" *United States v. Cole*, 425 F. Supp. 3d 468, 473 (W.D. Pa. 2019) (quoting *United States v. Harris*, 884 F. Supp. 2d 383, 387 n.2 (W.D. Pa. 2012)).

[3] Lieutenant Safar has been with the Monroeville Police Department for over twenty-three years. His first ten years were spent as a patrol officer, and prior to his role as a lieutenant, he served as a sergeant and before that as an immediate supervisor. He has been a lieutenant for four years. Because his department does not have an assistant chief, he is the second-in-command of the police department. He has been involved in hundreds of narcotics investigations. (ECF No. 58, pp. 4–9).

("Yukon")) was parked next to hers, walked to his Yukon and began talking to them.   To Lieutenant Safar, George appeared nervous.   (ECF No. 58, pp. 14–15, 33–37, 72).   George went in and out of his vehicle multiple times.   (*Id.* at 15).

Once it was determined that Massey had an active arrest warrant and would be arrested, she asked that her vehicle be released to George.   Lieutenant Safar said she could give her keys to George.   In order to do so, another officer asked George for his license.   George said he did not have it on him as he left it in his room.   He returned to the breezeway of the hotel, and after a minute or so, he returned and gave his license to another officer.   (*Id.* at 17–18, 37–39).   Lieutenant Safar found this behavior odd as George said they had already checked out and were getting ready to leave.   When officers ran George's license, it was determined that he too had an active arrest warrant for hindering apprehension.   George was taken into custody.   He was handcuffed and patted down.   Nothing was found on his person.   (*Id.* at 18–19, 39–40).   Both Massey and George were separately transported to the Wilkins Township police station.

At some point during these events, Lieutenant Safar walked between the two vehicles and looked into the side window of the Yukon.   Although the windows were tinted ("it was darker than what was legal" (*Id.* at 42)) and he could not remember if he had to shine a flashlight to see inside or if he put his hands on the glass and face up to it to look in (*Id.*), he apparently saw a purple Crown Royal bag on the center console between the seats, and what he thought was a marijuana blunt near a cupholder.   (*Id.* at 16–17, 41–42).   Lieutenant Safar did not know if the blunt contained tobacco or marijuana.   (*Id.* at 44).   The Court does not doubt that, based on his training and experience, Lieutenant Safar was familiar with marijuana.   (*Id.* at 8–11).   However, having carefully reviewed the evidence, including the dark tint of the windows, the Court is suspicious of how Lieutenant Safar saw the blunt amidst the other objects located in the area near the cupholder.

(ECF No. 58, pp. 72–74, 77–78); (ECF Nos. 57-4 and 57-6).[4]  While the Court is willing to credit him with seeing the Crown Royal bag on the center console, it does not find his testimony credible as to seeing a blunt in the area near the cupholder.

Although Lieutenant Safar thought the Crown Royal bag contained something other than a bottle of Crown Royal, he did not know because he could not see inside the bag.  (ECF No. 58, pp. 4, 45).  Lieutenant Safar asked George about the Crown Royal bag, and George said it contained names and stuff.  (*Id.*).  Lieutenant Safar asked to search the bag, which implicitly involved searching the vehicle, and George said no.  (*Id.* at 45–46).  While Massey was arrested and transported with her vehicle keys, Lieutenant Safar kept George's vehicle keys.  (*Id.* at 47); (ECF No. 57-8).  He did so because he had decided that he was going to need to get into the Yukon. (ECF No. 58, p. 47)

After George was gone, Lieutenant Safar, who remained at the scene by himself, spoke with the hotel clerk.  He asked to see the camera recording of the breezeway area.  He reviewed the video, which apparently depicted George, once out of sight of the officers, conceal "something down the back of his pants like between the cheeks of his buttocks."  (*Id.* at 19, 40–41).  Lieutenant Safar then returned to the vehicle and noticed that the Crown Royal bag was no longer on the center console.  (*Id.* at 19).  Lieutenant Safar contacted the officers transporting George, concerned that George had something concealed, because when they arrested him, they only checked his pockets for weapons.  George was searched again, and, according to Lieutenant Safar, officers

---

[4] The Court has carefully reviewed the photographs of the interior of the vehicle taken during the search executed pursuant to the warrant.  (ECF Nos. 57-4 and 57-5).  It has also reviewed photographs of the Yukon taken in September 2022.  The window tinting on the vehicle had not changed between July 11, 2021, and when photographs were taken of the Yukon in September 2022. (ECF No. 57-6); (ECF No. 58, pp. 72–74, 77–78).  The tinting of the windows is quite dark with the front windshield having the lightest of the tinting.  (ECF No. 57-6).

allegedly found a small baggie of marijuana hidden in his pants. (*Id.* at 20–21, 41, 46). However, the alleged baggie of marijuana was never inventoried or entered into evidence. (*Id.* at 54–55). The absence of any corroboration, in addition to the Court's credibility determination of Lieutenant Safar's testimony, leads it to conclude that Lieutenant Safar's testimony regarding the recovery of a baggie from George is not credible.

Lieutenant Safar next requested that a K-9 officer respond to the Rodeway Inn to conduct an exterior sniff of George's vehicle. (*Id.* at 21–22). Penn Hill Police Department Police Officer K-9 Specialist Jason Bonace ("Officer Bonace") and his certified K-9 partner responded. The K-9 officer did not alert, refused to work, and only barked at Officer Bonace.[5] (*Id.* at 22, 49, 64–67). Officer Bonace told Lieutenant Safar that he could have another K-9 partner come, but Lieutenant Safar said it was not necessary. (*Id.* at 70). Lieutenant Safar did not request another K-9 officer. (*Id.* at 50).

Inexplicably, even though George had been removed from the scene and no warrant had been issued to search the car, Lieutenant Safar decided to enter George's vehicle to recover "the suspected marijuana." (*Id.* at 48–49). He located the Crown Royal bag on the floor and picked it up. According to Lieutenant Safar, "immediately upon picking it up" he "knew it was the way heroin was packaged." (*Id.* at 48). Lieutenant Safar admittedly entered the vehicle knowing the state of Pennsylvania law was such that it did not permit warrantless nonconsensual searches of vehicles without probable cause in exigent circumstances. (*Id.* at 51–52). According to Lieutenant Safar, when he entered the vehicle, "he wasn't searching," but "was going to recover those two

---

[5]   Officer Bonace testified that the K-9 officer did not want to work and was not cooperative. (*Id.* at 64–66).

items" and he had probable cause to do so. (*Id.* at 60). Of further note is that Lieutenant Safar knew that the Allegheny County crime lab did not test for marijuana.[6] (*Id.* at 9–10, 53–54)

Lieutenant Safar called for a tow truck to take the Yukon back to the police station where he was going to apply for a search warrant.[7] (*Id.* at 24, 50). The vehicle was towed at approximately 12:30 p.m. (*Id.* at 50). Once Lieutenant Safar returned to the police station, he ran a criminal history search on George and discovered that George had been "convicted on five different occasions for manufacture, possession, possession with intent." (*Id.* at 24, 51).

In crafting the affidavit for the search warrant, Lieutenant Safar admitted that his representation that Mr. George appeared "very nervous" when he encountered the police that day was an "overstatement." (*Id.* at 59). Lieutenant Safar also made the following omissions in his search warrant application:

- That the blunt contained "suspected" marijuana.

- That the small baggie contained "suspected" marijuana, and it was not preserved.

- That he knew the Allegheny County crime lab no longer tested for marijuana, and that the blunt and small baggie would not be tested.

- That the Yukon had dark window tint.

- That a K-9 officer, trained to detect narcotics, failed to alert to the presence of narcotics because it refused to work, and that he did not request another K-9 officer.

---

[6] The suspected marijuana blunt and the alleged baggie of suspected marijuana taken from George's person were never tested by a laboratory. (*Id.* at 54–55).

[7] Lieutenant Safar did not have Massey's vehicle towed. (*Id.* at 50).

- That he conducted a nonconsensual warrantless search of the Yukon where it was parked, with no one else present, knowing that doing so was in violation of Pennsylvania law.

- That when he entered the vehicle, he actually picked up the Crown Royal bag, felt it, and determined that it felt like packaged heroin.

(*Id.* at 55–57). Lieutenant Safar's testimony led the Court to believe that he thought it questionable that he would obtain a search warrant from a magisterial district judge. The Court believes, having listened to Lieutenant Safar's testimony and observed his demeanor, that he crafted the affidavit in a manner to negatively portray George and misrepresent the circumstances in order to bolster his chances of obtaining a search warrant which he believed—according to the actual facts—was likely insufficient.

### III.   ANALYSIS

The Court holds that George's motion must be granted and the evidence gathered against him must be suppressed. The evidence of record demonstrates that George was subjected to an illegal warrantless search of his vehicle. None of the exceptions to the Fourth Amendment's requirement of a warrant apply. Further, the facts set forth in the affidavit for the search warrant, when combined with the reckless misstatement and omissions, fall short of providing a substantial basis for the finding of probable cause by the state magisterial district judge. Further, the good faith exception to the exclusionary rule does not protect the search of George's vehicle. The Court has no choice but to suppress the evidence gathered during the illegal search and seizure.

### A. George was subjected to an illegal warrantless search of his vehicle.

George was subjected to a warrantless search of his vehicle at the Rodeway Inn. The opening of the door and entering the interior of the Yukon by Lieutenant Safar constituted a search

requiring an exception to the warrant requirement in order to satisfy the minimum requirements of the Fourth Amendment. *See United States v. Hurtt*, 31 F.4th 152, 163 n. 85 (3d Cir. 2022). No such exception applies here.

Contrary to the Government's argument (ECF No. 60, p. 4), the search was not executed incident to arrest. The rationale for a search incident to arrest is to seize weapons and to prevent the destruction of evidence of a crime, and it is limited in scope to a search of the arrestee's person and the area within their immediate control. *Chimel v. California*, 395 U.S. 752, 763 (1969). In the automobile context, "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Arizona v. Grant*, 556 U.S. 332, 351 (2009).

George was not arrested as a result of a vehicle stop and he was not in his parked vehicle when the encounter began. He was arrested when officers discovered that he had an active warrant for hindering apprehension after he offered to take possession of Massey's and they checked his driver's license. Lieutenant Safar conducted the search after George was arrested and already transported away from the scene. There is no objective basis upon which the Court could conclude that Lieutenant Safar had a reason to fear either George or the environment in which the arrest unfolded since George was not within reaching distance of the interior of his vehicle while he was being transported from the Rodeway Inn to the police station. It was also not reasonable to believe that the Yukon contained evidence of George's offense of arrest (an active arrest warrant for hindering apprehension). What occurred was not a legally viable search incident to arrest.

Further, the automobile exception does not render the search lawful. The automobile exception to the search warrant requirement provides that, "[i]f a car is readily mobile and probable

11

cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (citation omitted). "Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Grubbs*, 547 U.S. 90, 95 (2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).[8] "The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991). To determine whether there was probable cause for a vehicle search, a court evaluates whether the "facts, viewed from the standpoint of an objectively reasonable police officer" support a "fair probability" that the vehicle contained evidence of the crime, based on the totality of the circumstances at the time the officers conducted the search. *United States v. Donahue*, 764 F.3d 293, 301 (3d Cir. 2014).

No probable cause existed to permit the search of the Yukon seeking evidence of a crime. First, to the extent George may have appeared nervous, it carries no weight in the Court's analysis, particularly since Lieutenant Safar admitted that he overstated George's behavior. There were three officers speaking with Massey and a police vehicle was blocking her vehicle. She was ultimately arrested and transported from the scene. Massey wanted her vehicle keys relinquished to George. That George may have been nervous during his interaction with officers in such a situation involving his girlfriend is inconsequential and did not furnish the requisite probable cause to search the Yukon.

---

[8] "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usually, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. The inquiry is "commonsense," "practical," and "nontechnical;" it is based on the totality of the circumstances and is judged by the standard of "reasonable and prudent men." *Id.* at 230–31.

Second, there was no smell of marijuana emanating from the Yukon or from George. Lieutenant Safar admitted that he did not know if the blunt he allegedly saw next to the cupholder contained tobacco or marijuana.  Nothing in the record implies that George was acting as if he were under the influence of drugs, and the Court does not find Lieutenant Safar's testimony credible that he saw the blunt amidst the other objects located in the tray next to the cupholder, given the degree of dark tinting on the Yukon's windows.  (ECF Nos. 57-4 and 57-6); (ECF No. 58, pp. 72–74, 77–78).  Thus, the existence of a blunt inside of the Yukon did not furnish probable cause.

Third, the Crown Royal bag did not provide probable cause to search.  The Court is unwilling to accept Lieutenant Safar's position that the bag constituted probable cause because, based on "his training and experience" "a lot of people will actually transport or at least store different drugs in that particular type of bag."  (ECF No. 58, p. 16).  A Crown Royal bag, alone, does not give rise to probable cause.  It may by filled with drugs.  It may be filled with whiskey, or a number of other legal contents.  The fact that some criminals use Crown Royal bags to carry contraband does not, without anything more, confer probable cause.  Further, given the dark tint of the Yukon's windows, the Court  finds that the facts cannot support a determination that something more existed.  The Court does not believe that the circumstances allowed Lieutenant Safar to conclude, from outside the vehicle, that there was probable cause that the Crown Royal bag contained something illegal.  It was only upon entering the vehicle without a warrant and actually handling the bag that Lieutenant Safar could gather that it contained drugs.  The mere observation of the bag from outside of the vehicle, in the circumstances of this case, does not give rise to probable cause.

Lastly, as to the supposed recovery of a suspected baggie of marijuana from George by the transporting officers, the officers who allegedly recovered the baggie did not testify, and the baggie was neither inventoried nor entered into evidence.  The Court does not find that Lieutenant Safar's testimony about the alleged baggie of marijuana was credible.  Thus, it is not a factor to be considered in evaluating whether probable cause existed to search the Yukon.[9]  Hence, what occurred was not a legally viable search pursuant to the automobile exception.

The Court holds that Lieutenant Safar conducted an illegal warrantless search of George's vehicle.

## B.  The independent source doctrine does not apply.

Typically, the exclusionary rule requires suppression of evidence obtained as a result of an illegal search.  *United States v. Stabile*, 633 F.3d 219, 243 (3d Cir. 2011); *see also Wong Sun v. United States*, 371 U.S. 471, 485 (1963).  Because the evidence here was seized during a warranted search, the Government seemingly argues that this is an independent source case.  (ECF No. 60, pp. 5–7).  "The independent source doctrine serves as an exception to the exclusionary rule and permits the introduction of 'evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality.'"  *United States v. Price*, 558 F.3d 270, 281 (3d Cir. 2009) (quoting *Murray v. United States*, 487 U.S. 533, 537 (1988)).  If a lawful warrant is obtained subsequent to the initial illegal search or entry, then the evidence is admissible if the warrant is based upon probable cause other than facts tainted by the initial illegal act and the "officers were not prompted to obtain the warrant

---

[9] Assuming *arguendo* that a suspected baggie of marijuana was, in fact, recovered from George, it falls woefully short of providing an articulable and particularized basis to conclude that his vehicle contained drugs.  If anything, the more reasonable inference would be that George removed it from his vehicle prior to his arrest as Lieutenant Safar did not see the Crown Royal bag that had originally been sitting on the center console.

by what they observed during the initial entry." *United States v. Herrold*, 962 F.2d 1131, 1141–42 (3d Cir. 1992); *see also United States v. Johnson*, 690 F.2d 60, 63 (3d Cir.1982).

First, the Court must determine whether Lieutenant Safar's "decision to seek the warrant was prompted by what [he] had seen during the [warrantless] entry" and whether the "information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant." *Murray*, 487 U.S. at 542. The Court, having evaluated Lieutenant Safar's account of the transaction in light of the facts of record, finds that he intended to search the Yukon by whatever means he could, which included towing the vehicle and applying for a search warrant. (ECF No. 58, p. 50). According to Lieutenant Safar, he requested the K-9 officer "to use that as additional probable cause to potentially get a search warrant." (*Id.* at 22). Prior to having the vehicle towed, he entered the vehicle and examined the blunt and the Crown Royal bag, claiming that he "wasn't searching," but "was going to recover those two items [(i.e., the blunt and Crown Royal bag)]." (*Id.* at 60). Lieutenant Safar explained that in preparing the affidavit: "I didn't want to mention what I saw in the [Crown Royal] bag because if I wasn't able to get a search warrant on the merits of -- at the time thinking it was marijuana, I didn't want to try to sway or imply to the judge at all what had been in there, what might change his mind or make him lean one way or another." (*Id.* at 59–60). Thus, Lieutenant Safar excised the information that he unlawfully obtained by entering the Yukon. In fact, he excised all reference to his illegal activity. Accordingly, the Court finds that the magisterial district judge's decision to issue the warrant was not influenced by Lieutenant Safar's illegal warrantless entry into the Yukon.

Next, the Court must "determine if there was probable cause for the warrant to be issued." *Price*, 558 F.3d at 281 (citations and quotations omitted). The Court is cognizant of its limited role, and that the resolution of doubtful or marginal cases should be determined by the preference

to be accorded to warrants.  The Court finds, for the reasons that follow, that the facts set forth in the affidavit, when combined with the reckless misstatement and omissions, fall short of providing a substantial basis for the finding of probable cause by the state magisterial district judge.

    1.  Standard of Review for Search Warrant

The Fourth Amendment requires that search warrants be supported by probable cause. Whether probable cause exists is to be determined by a practical and commonsense approach.  The appropriate inquiry is "whether, given all the circumstances set forth in the affidavit ... including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238–39.  When reviewing a magistrate's determination of probable cause to issue a warrant, a district court should "[pay] great deference" to the magistrate's decision.  *Id.* at 236.  This standard means that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* at 237 n.10 (citation omitted).  In *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984), the Supreme Court emphasized that a reviewing court is not to conduct a "de novo determination of probable cause" but is to decide whether the evidence reviewed as a whole provided a substantial basis supporting the magistrate's decision to issue a warrant.  Such deference, however, "does not mean that reviewing courts should simply rubber stamp a magistrate's conclusion." *United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011) (citation omitted).  Rather, the duty of the reviewing court is to "ensure that the state district justice had a 'substantial basis' for concluding that the affidavit supporting the warrant established probable cause." *United States v. Mortimer*, 387 F. App'x 138, 140 (3d Cir. 2005) (citation omitted); *see also United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993) ("Keeping in mind that the task of the issuing magistrate is simply to determine whether there is a fair

probability that contraband or evidence of a crime will be found in a particular place, a reviewing court is to uphold the warrant as long as there is a substantial basis for a fair probability that evidence will be found.") (internal quotation marks omitted).

In addition to challenging the sufficiency of the affidavit, "a defendant may attack the issuance of a warrant if based on untruthful information." *United States v. Harvey*, 2 F.3d 1318, 1323 (3d Cir. 1993) (citing *Franks*, 438 U.S. at 165, 171). A successful truthfulness attack must show, through evidence, that the police put forward false facts either deliberately or through a reckless disregard for the falsity of the facts. *Id*. The fruits of a search warrant are subject to suppression if, after a hearing, a defendant establishes by a preponderance of the evidence that: (1) a supporting affidavit contained a false statement (or omission) made knowingly or with reckless disregard for the truth; and (2) the false statement was material to the probable cause determination. *Franks*, 438 U.S. at 155–56. *See also United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006). The United States Court of Appeals for the Third Circuit has noted:

> The Supreme Court in "*Franks* gave no guidance concerning what constitutes a reckless disregard for the truth in fourth amendment cases, except to state that 'negligence or innocent mistake [is] insufficient.'" *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir.2000) (quoting *United States v. Davis*, 617 F.2d 677, 694 (D.C.Cir.1979)). In *Wilson*, we set forth standards to identify what constitutes "reckless disregard for the truth" regarding both misstatements and omissions:
>
> > In evaluating a claim that an officer both asserted and omitted facts with reckless disregard for the truth, we hold that: (1) omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would want to know; and (2) assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting.
>
> *Id*. at 783. The latter standard is similar to the actual malice standard set forth in First Amendment defamation claims. *Id*. at 788.
> In the end, the defendant must prove by a preponderance of the evidence that probable cause does not exist under the corrected affidavit, i.e., that the deficiency in the affidavit was material to the original probable cause finding. *Id*. We have recognized a distinction between misrepresentations and omissions for

purposes of determining whether deficiencies in the affidavit are "material." When faced with an affirmative misrepresentation, the court is required to excise the false statement from the affidavit. In contrast, when faced with an omission, the court must remove the "falsehood created by an omission by supplying the omitted information to the original affidavit." *Id.* at 400.

If the defendant is able to ultimately meet this burden, "the Fourth Amendment requires that ... the fruits of the search [must be] excluded to the same extent as if probable case was lacking on the face of the affidavit." *United States v. Frost*, 999 F.2d 737, 743 (3d Cir.1993) (quoting *Franks*, 438 U.S. at 156, 98 S.Ct. 2674).

*Id.* at 382.

2.  Analysis of Search Warrant

The affidavit indicated that the baggie of marijuana found in George's pants, the presence of a Crown Royal bag in the vehicle, the observation of a blunt inside the vehicle, and George's criminal history, led Lieutenant Safar to suspect the presence of illegal narcotics, narcotics paraphernalia and narcotics packaging materials in the Yukon. According to the Government, the omitted information was "not material nor necessary to a finding of probable cause." (ECF No. 60, p. 7). Its position is that the search warrant contained the following pertinent details that supplied probable cause:

> the defendant appearing very nervous speaking with [the] officer even though the conversation was only small talk; the movement of a purple Crown Royal bag that was originally observed by Lt. Safar sitting on the center console in plain view after Lt. Saf[a]r commented to the defendant about the number of people he had dealt with carrying drugs in Crown Royal bags; the peculiarity involving the defendant advising the officers that he had to return to his motel room of which he advised earlier to the involved officers that he checked out of to retrieve his driver's license; the defendant's description of the contents of the Crown Royal bag as "some stuff, names and stuff"; the concealment of a small amount of marijuana in the rear of the defendant's pants; the presence of a marijuana "blunt" in plain view between cup holders on the dashboard; and the fact that the defendant was found guilty on several occasion[s] for possession of and/or manufacturing charges.

(ECF No. 60, pp. 6–7). The Government's argument is not persuasive in light of the evidence that was adduced during the evidentiary hearing. The Court holds that the affidavit relies only on

inferences and mere speculation, and it did not provide a substantial basis for the magisterial district judge's finding of probable cause due to the material misstatement and reckless omissions.

Setting aside his illegal warrantless search of the vehicle, Lieutenant Safar made the following omissions in his search warrant application:

- That the blunt contained "suspected" marijuana.

- That the small baggie contained "suspected" marijuana, and it was not inventoried or preserved.

- That he knew the Allegheny County crime lab no longer tested for marijuana, and that the suspected blunt and small baggie would not be tested.

- That the Yukon had window tint to the point that he might have had to shine a flashlight to see inside or put his face near the glass with his hands on the side of either eye to see inside.

- That a K-9 officer, trained to detect narcotics, failed to alert to the presence of narcotics because it refused to work, and that he did not request another K-9 officer.

(*Id.* at 55–57). The Court holds that these were reckless omissions. The Third Circuit has held that "omissions are made with reckless disregard if an officer withholds a fact … that '[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know.'" *Wilson,* 212 F.3d at 788 (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993)). Furthermore, Lieutenant Safar's misstatement of George's behavior – that he appeared "very nervous" – was made with reckless disregard.

Because the Court has determined that there was sufficient evidence of a material misstatement and that omissions were made with reckless disregard for the truth, the Court must now turn to determining whether they were material. An omission or assertion is "material" when

"probable cause does not exist under the corrected affidavit." *Yusuf*, 461 F.3d at 383.  Overstating George's nervousness is a material misstatement that affects the truthfulness of the facts set forth in the affidavit.  It ascribes to him some level of guilty conscience that did not exist.

When any mention of George's behavior is excised from the affidavit, what remains is a blunt in a tray near the cupholder in the vehicle, a Crown Royal bag that moved within the vehicle during the time George was lawfully accessing his vehicle, a baggie allegedly recovered from his person during transport, and George's criminal history for "possession of and/or manufacturing charges." (ECF No. 40-1).  The fact that the blunt could have contained tobacco, and that it was only suspected by Lieutenant Safar to be marijuana, is material to the finding of probable cause.  Also material to the finding of probable cause is the fact that the baggie allegedly recovered from George contained only suspected marijuana, and was neither inventoried nor preserved.   The magisterial district judge was led to believe marijuana existed in the vehicle despite the fact that the window tinting of the vehicle made it difficult to see anything inside.  Lieutenant Safar did not definitely know that the blunt was marijuana, and the suspected baggie of marijuana allegedly removed from his person was never inventoried or preserved.

For the reasons previously discussed herein, after including the omissions, the Court is compelled to find that the facts in the affidavit fall short of providing a substantial basis for the magisterial district judge's finding of probable cause.  The Court is wary of giving Lieutenant Safar's training, expertise, and experience too much significance in the particular circumstances of this case.  The affidavit contains no concrete facts suggesting that any illegal narcotics, narcotics paraphernalia, and narcotics packaging materials would be found inside the vehicle.  The Court concurs with George that the affidavit contains nothing but Lieutenant Safar's suspicion based on purported marijuana found outside the car (which the Court doubts actually existed) and two items

Officer Safar believed he observed in the car (a blunt and a Crown Royal bag), both of which could have had innocent explanations and the Court finds it incredible that Lieutenant Safar saw the blunt given the Yukon's window tinting.  The K-9 did not detect narcotics in the car and Lieutenant Safar chose not to request another K-9 officer, factors that seemingly imply that he chose not to obtain evidence to support his suspicion that the Yukon contained illegal narcotics, narcotics paraphernalia, and narcotics packaging materials.  Lastly, the Court concurs with George that his criminal history of controlled substance charges is not enough, without the existence of any other factors, to support a finding of probable cause.[10]

While Lieutenant Safar was diligent in running license plates and ascertaining active arrest warrants for Massey and George, his "investigation" did not adduce sufficient evidence substantiating a finding of probable cause to search George's vehicle.  The Court finds that a neutral detached magisterial district judge reviewing the affidavit in a commonsense manner and considering all the circumstances would not have concluded that probable cause had been established.

For these reasons, an invalid search warrant issued, and the independent source doctrine does not apply.

**C.  The good faith exception to the exclusionary rule does not apply.**

Even if the magisterial district judge lacked a substantial basis for the issuance of a search warrant, the Court ordinarily should not suppress evidence seized pursuant to that warrant "when an officer acting with objective good faith has obtained [the] search warrant from a judge or

---

[10]  The Court recognizes that the Third Circuit has held that "the use of prior arrests and convictions to aid in establishing probable cause is not only permissible, but is often helpful."  *United States v. Conley*, 4 F.3d 1200, 1207 (3d Cir. 1993) (citations omitted) (collecting cases).  This utility is enhanced when the prior offenses relate to the crime being investigated.  *Id.*

magistrate and acted within its scope." *United States v. Leon*, 468 U.S. 897, 920 (1984) (footnote omitted); *see also United States v. Stearn*, 597 F.3d 540, 560 (3d Cir. 2010). "Ordinarily, the 'mere existence of a warrant ... suffices to prove that an officer conducted a search in good faith,' and will obviate the need for 'any deep inquiry into reasonableness.'" *Id.* at 541 (quoting *United States v. Hodge*, 246 F.3d 301, 308 (3d Cir. 2001)). The Third Circuit has announced the following four situations in which an officer's reliance on a warrant would not be reasonable, and would therefore not trigger the exception:

> (1) when the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;
>
> (2) when the magistrate judge abandoned his judicial role and failed to perform his neutral and detached function;
>
> (3) when the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
>
> (4) when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*Hodge*, 246 F.3d at 308 (cleaned up) (citation omitted).

Because of the high social costs of excluding evidence in a criminal case, the Supreme Court has instructed that the exclusionary rule should only be applied when "police conduct [is] ... sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 555 U.S. 135, 144 (2009). Accordingly, courts apply the rule when police conduct is "deliberate, reckless, or grossly negligent," or when it will deter "recurring or systemic negligence." *Id.* at 144–45. Exclusion is a "bitter pill," *Davis v. United States*, 564 U.S. 229, 237–38 (2011), swallowed only where it would result in a "substantial deterrent effect" that outweighs its resulting costs, *Leon*, 468 U.S. at 907 n.6.

The Government bears the burden of establishing that the good faith exception applies. *Id.* at 924. Its argument as to why the good faith exception should apply is:

> Lieutenant Safar had an objectively reasonable basis for believing the information contained in the search warrant affidavit was sufficient to establish probable cause to obtain a search warrant and there was no deliberate attempt to withhold relevant information from the magistrate. Quite simply, suppressing the evidence in a situation such as this or similar situations won't have a deterrent effect because officers in the future, just as Lt. Safar here, cannot be expected to provide explicit detail for every fact relied upon in a search warrant affidavit.

(ECF No. 60, p. 10). The Court is not persuaded by the Government's invocation of the good faith exception because, as addressed in the prior section, the magisterial district judge issued the search warrant in reliance on a deliberately and recklessly false affidavit, and the search warrant was based on an affidavit so lacking in indicia of probable cause. *Hodge*, 246 F.3d at 308.

The evidence of record is such that not only did Lieutenant Safar know his initial entry into the vehicle without a warrant was unconstitutional, but he carefully omitted any mention of the search and crafted the affidavit in a manner to negatively portray George and inflate the existence of probable cause. Lieutenant Safar's testimony, much of which the Court finds incredible, nonetheless led it to conclude that Lieutenant Safar thought it questionable that he would get a search warrant even with his curated affidavit. Any reasonably well-trained officer in the "stationhouse shop would recognize as clearly insufficient" the affidavit that was presented to the magisterial district judge, particularly an officer with Lieutenant Safar's training and experience. *United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993). His conduct was not objectively reasonable.

"Good faith is not a magic lamp for police officers to rub whenever they find themselves in trouble." *United States v. Reilly*, 76 F.3d 1271, 1280 (2nd Cir. 1996). The good faith exception to the exclusionary rule does not protect searches by officers who fail to provide all potentially

adverse information to the issuing magistrate.  Deterring police from submitting affidavits that omit crucial factual allegations and include material misstatements is critical.  Applying the good faith exception here would reward law enforcement for grounding a warrant application in something other than a conscientious assessment of the facts and circumstances.  Suppressing all evidence seized from George's vehicle advances privacy interests that are the foundation of the Fourth Amendment, and deters reckless police conduct.

### IV.   CONCLUSION

For the foregoing reasons, George's suppression motion will be granted.  An Order of Court will follow.

BY THE COURT:

_____

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

Date:   5/8/24